UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| OLAMIDE OLAJIDE AND BILLYHAAN LLC | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: 24CV998 |
| JOSEPH NANTOMAH, and HIGH INCOME PERFORMANCE PARTNERS LLC | ) ) ) ) ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Olamide Olajide ("Plaintiff Olajide") and Billyhaan LLC, by their attorneys, AxePoint Law, submit this brief in support of their motion for summary judgment.

**INTRODUCTION**

The Defendants engaged in an elaborate and malicious scheme designed to deceive the Plaintiffs into investing substantial sums of money based on false representations of profitable real estate ventures. With complete disregard for the truth, the Defendants lured the Plaintiffs into a fraudulent investment opportunity by promising high returns through property flipping. These assurances were built on lies – lies that concealed the true nature of the investment, misrepresented the Defendants' real estate activities, and led Plaintiff Olajide to believe their money was being put to good use. In reality, the Defendants never invested a dime of the Plaintiffs' funds and instead retained the money for their personal gain, offering nothing but empty promises and fabricated returns.

1

Plaintiff Olajide, having trusted the Defendants' fraudulent claims, is a victim of a well-orchestrated scam. The Defendants' actions not only violated securities laws but also shattered the Plaintiffs' financial security and personal well-being. The overwhelming evidence establishes that the Defendants intentionally misled the Plaintiffs, with no intention of fulfilling their obligations or providing any legitimate investment activity. The law is clear – fraudulent conduct such as this warrants decisive action. The Plaintiffs respectfully request that the Court grant their motion for summary judgment, holding the Defendants accountable for their fraudulent behavior and awarding the Plaintiffs the relief they are rightfully owed.

## FACTS[1]

In October 2023, the Plaintiffs discovered Defendant Joseph Nantomah ("Defendant Nantomah") actively promoting real estate investment opportunities through his social media presence on Instagram. Defendant Nantomah presented himself as a successful entrepreneur and real estate investor, claiming to generate substantial returns through house flipping. On October 25, 2023, Defendant Nantomah induced Plaintiffs to invest in his real estate venture by guaranteeing a 40% return within an eight-month period. He specifically represented that Plaintiffs' investment would fund the purchase and renovation of the property located at 3622 N 37th Street, Milwaukee, WI 53216 (the "Investment Agreement"). On October 25, 2023, Plaintiffs entered into a formal Investment Agreement with Defendant Nantomah and High Income Performance Partners LLC and transferred $50,000 to the Defendants under the terms of the agreement.

On November 7, 2023, Plaintiffs entered into a second investment agreement with

---

[1] *See* Plaintiff Olajide's Affidavit of material facts submitted with this brief herewith.

the Defendants under which Defendants promised a $23,000 return on investment within three months. The Defendants represented that Plaintiffs' investment would fund the purchase and renovation of the property located at 7026 Lakeview Drive, San Antonio, TX 78444 (the "Second Investment Agreement"). On November 9, 2023, Plaintiffs paid $20,000 to Defendants pursuant to the terms of the Second Investment Agreement.

Subsequently on November 7, 2023, Plaintiffs entered into a third investment agreement with the Defendants under which Defendants promised a $23,000 return on investment within three months. The Defendants represented that Plaintiffs' investment would fund the purchase and renovation of the property located at 8727 Key Windy Way, Converse, TX 78109 (the "Third Investment Agreement"). On November 9, 2023, Plaintiffs paid $20,000 to Defendants pursuant to the terms of the Third Investment Agreement.

Under the terms of the original Investment Agreement, Plaintiffs were entitled to receive a $70,000 return by June 25, 2024; however, no returns were made by that date. Under the terms of the Second Investment Agreement, Plaintiffs were entitled to receive a $23,000 return by February 7, 2024; however no returns were made by that date. Under the terms of the Third Investment Agreement, Plaintiffs were entitled to receive a $23,000 return by February 7, 2024. Although the Defendants were late in making this payment, they ultimately paid the Plaintiffs $24,000 as compensation for the delay.

In the months following, Plaintiffs then repeatedly reached out to Defendant Nantomah to inquire about the remaining promised returns, but Defendant Nantomah provided various excuses, including claims of delays due to coordination with his bank, yet no payments were forthcoming.

The Plaintiffs have reason to believe that the funds they invested were not used for legitimate real estate ventures as Defendant Nantomah had represented. Instead, it

3

appears that Defendant Nantomah used the funds to support his luxurious personal lifestyle and other ventures unrelated to the business he claimed to operate. Had Plaintiff Olajide known the true nature of the Defendants' activities, he would never have invested in the scheme.

To date, the Plaintiffs have not received the $92,000 owed to them under the Investment Agreement and Second Investment Agreement. As a result of the fraudulent actions of the Defendants, the Plaintiffs have suffered significant financial losses.

## SUMMARY JUDGMENT STANDARD

A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Brutyn, N.V. v. Anthony Gagliano Co.*, No. 04 CV 0527, 2005 WL 3811423, at *4 (E.D. Wis. Nov. 29, 2005). A party seeking summary judgment bears the burden of demonstrating that no genuine issue of material fact exists for trial and that the movant is entitled to judgment as a matter of law. *Hannon v. Turnage*, 892 F.2d 653, 656 (7th Cir. 1990). A party opposing a properly supported summary judgment motion cannot rely on mere allegations in the pleadings, or on conclusory statements in affidavits. *Koclanakis v. Merrimack Mut. Fire Ins. Co.*, 899 F.2d 673, 675 (7th Cir. 1990); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989). Instead, the non-moving party must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010). Merely raising a metaphysical doubt about the material facts is insufficient to defeat summary judgment. *Id.*

To defeat summary judgment, the non-moving party must identify material facts in

4

dispute that are outcome-determinative under the governing law. *Local 1545, United Mine Workers v. Inland Steel Coal Co.*, 876 F.2d 1288, 1293 (7th Cir. 1989). The court must then consider only those disputes over facts that might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). The court must also draw all reasonable inferences in favor of the non-moving party, *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir. 1989), but cannot make unreasonable inferences. *Spring v. Sheboygan Area School District*, 865 F.2d 883, 886 (7th Cir. 1989). If the nonmoving party cannot establish the existence of an essential element on which that party bears the burden of proof at trial, then summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

## ARGUMENT

**1. The Defendants' Breach of Contract is Indisputable.**

To prevail on a claim for breach of contract, a party must show "proof of three elements: (1) a valid contract; (2) breach of that contract by the defendant; and (3) damage from the breach." *Gallo v. Mayo Clinic Health System-Franciscan Med. Ctr., Inc.*, 907 F.3d 961, 965 (7th Cir. 2018); *Northwestern Motor Car, Inc. v. Pope*, 51 Wis. 2d 292, 296, 187 N.W.2d 200 (1971). Further, "under general principles of contract law, '[a]n injured party is entitled to the benefit of his agreement, which is the net gain he would have realized from the contract but for the failure of the other party to perform'" *Dental Health Prods., Inc. v. Sunshine Cleaning Gen. Servs., Inc.*, 657 F. Supp. 3d 1151, 1156 (E.D. Wis. 2023) (quoting *Thorp Sales Corp. v. Gyuro Grading Co.*, 111 Wis.2d 431, 438–39, 331 N.W.2d 342 (1983)).

The evidence in this case unambiguously establishes that three valid investment contracts were formed, of which, the Investment Agreement and Second Investment Agreement were breached by the Defendants, resulting in substantial harm to the

5

Plaintiffs. The October 23, 2023, Investment Agreement is a valid contract as it satisfies the essential elements of a contract: offer, acceptance, and consideration. The Defendants offered the Plaintiffs an opportunity to invest $50,000 in a house-flipping venture, promising a 40% return on investment to be paid within eight months. The Plaintiffs accepted this offer and the $50,000 wire transfer receipt further demonstrates the transfer of funds to the Defendants, solidifying the existence of this agreement (Goodhart Dec. at ¶ 4, Ex. B). Moreover, in the Defendants' answer to the Plaintiffs' complaint, the Defendants explicitly admit the existence of this contract, leaving no room for dispute (Goodhart Dec. at ¶ 5, Ex. C ¶ 11). The Plaintiffs' mutual assent, coupled with the $50,000 payment, constitutes valid consideration, reinforcing that a binding and enforceable contract was formed. The Defendants' own admission confirms the legitimacy of the agreement, and their failure to honor it is a direct breach of their contractual obligations.

Similarly, the parties November 7, 2023, Second Investment Agreement is equally substantiated. The Second Investment Agreement clearly states that the Plaintiffs would invest $20,000 with a $3,000 return on investment to be paid within three months, sourced from the proceeds of a house-flipping venture (Goodhart Dec. at ¶ 3, Ex. A). The Plaintiffs' $20,000 wire payment to the Defendants confirms the agreement and serves as evidence of the transfer of funds to the Defendants (Goodhart Dec. at ¶ 4, Ex. B). The evidence speaks for itself – the Second Investment Agreement is valid and binding, and the Defendants' refusal to honor it constitutes a breach of their obligations.

Further, the Defendants have failed to respond to Plaintiffs' Requests for Admission served on April 23, 2025, and the time to respond expired on May 23, 2025, under Fed. R. Civ. P 36 (Goodhart Aff. at ¶ 6, Ex. D; Goodhart Aff. at ¶ 7, Ex. E). Based on these admissions, there is no genuine dispute of material fact regarding the existence of a

contract and Defendants' breach thereof:

- **Request No. 3** admits that an Investment Agreement existed between the Plaintiffs and Defendants.
- **Request No. 4** admits that a Second Investment Agreement existed between the Plaintiffs and Defendants.
- **Request No. 5** admits that a Third Investment Agreement existed between the Plaintiffs and Defendants.
- **Request No. 6** admits that written and oral representations were made to the Plaintiffs regarding a $70,000 Investment Return on their Investment Agreement within a specified timeframe.
- **Request No. 7** admits that written and oral representations were made to the Plaintiffs regarding a $23,000 Investment Return on their Second Investment Agreement within a specified timeframe.
- **Request No. 8** admits that written and oral representations were made to the Plaintiffs regarding a $23,000 Investment Return on their Third Investment Agreement within a specified timeframe.
- **Request No. 9** admits that the Defendants had custody of money or negotiable instruments belonging to the Plaintiffs.
- **Request No. 10** admits that the Defendants failed to fulfill their commitment to provide the Plaintiffs with a full $70,000 Investment Return in June 2024.
- **Request No. 11** admits that the Defendants failed to fulfill their commitment to provide the Plaintiffs with a full $23,000 Investment Return in February 2024.

This Court should grant summary judgment in favor of the Plaintiffs for their breach of contract claims as the evidence clearly establishes the existence of valid contracts and the

Defendants' breach of the Investment Agreement and Second Investment Agreement.

   **2. The Defendants Committed Civil Theft.**

The Defendant's actions not only amount to breach of contract but also meet the elements of civil theft under Wisconsin law. Theft, as defined in Wis. Stat. § 943.20(1), is committed by one who intentionally takes and carries away, uses, transfers, conceals, or retains possession of property of another without consent and with intent to deprive the owner permanently of possession of the property. Under Wisconsin law, the victim must have an ownership interest in the stolen property. *Milwaukee Ctr. for Indep., Inc. v. Milwaukee Health Care, LLC*, 929 F.3d 489, 494 (7th Cir. 2019). It is insufficient for a plaintiff to merely claim the defendant owes money – "[i]f you simply owe someone money and fail to pay it, you have broken a contract but you have not taken your creditor's property." *Kentuckiana Healthcare, Inc. v. Fourth St. Sols., LLC*, 517 F.3d 446, 447 (7th Cir. 2008).

The Plaintiffs' claim for civil theft should also be granted because the Defendants' retention of the Plaintiffs' investment funds satisfies the statutory definition of theft under Wis. Stat. § 943.20(1)(b). Unlike a mere breach of contract where a party fails to perform a promised obligation, here, the Defendants have unlawfully retained the Plaintiffs' property – funds that were entrusted to them for a specific purpose under the investment agreements – without consent and with the intent to permanently deprive the Plaintiffs of their rightful ownership. This was not a business deal gone wrong, this was a crime.

The evidence unequivocally establishes that the Plaintiffs invested a total of $90,000 under three separate investment agreements, with the understanding that these funds would be utilized for house-flipping ventures and returned with agreed-upon profits. However, instead of fulfilling their obligations, the Defendants have kept the Plaintiffs'

funds without providing any legitimate reason for retaining them. Their own admissions confirm this reality: in response to the Plaintiffs' complaint, the Defendants acknowledged receiving the investments, confirmed the existence of the agreements, and conceded their failure to repay the Plaintiffs in full (Goodhart Dec. at ¶ 5, Ex. C ¶¶ 11, 17, and 21; Goodhart Dec. at ¶ 6 Ex. D Request for Admission Nos. 3, 4, 5, 9, 10, and 11).

Critically, the Defendants' refusal to return the funds is not merely a failure to pay a debt – it is an act of intentional misappropriation. The Defendants have taken possession of the Plaintiffs' money, used it for their own purposes, and now claim that external market conditions prevent repayment. This explanation does not negate the fact that the funds belonged to the Plaintiffs and were provided for a specific, agreed-upon investment purpose. The Defendants' unilateral decision to withhold and continue using the Plaintiffs' money – despite repeated demands for repayment – demonstrates an intent to deprive the Plaintiffs permanently of their property.

Further reinforcing the claim of civil theft is the Defendants' clear admission in discovery responses that they had custody and control of the Plaintiffs' funds and failed to return the agreed-upon investment proceeds (Goodhart Dec. at ¶ 6 Ex. D Request for Admission Nos. 10 and 11). This admission is dispositive: the Defendants took money belonging to the Plaintiffs, kept it without their consent, and have made no meaningful effort to return it. The fact that they acknowledge owing the Plaintiffs money does not absolve them of liability under Wis. Stat. § 943.20(1)(b); rather, it confirms that they unlawfully retained the Plaintiffs' property.

Given the overwhelming evidence of the Defendants' retention of the Plaintiffs' investments, their explicit admissions, and their failure to return the funds as agreed, this Court should grant judgment in favor of the Plaintiffs on their civil theft claim. The

9

Defendants should not be allowed to hide behind business transactions to excuse what is, by any definition, theft. The Plaintiffs' civil theft claim is not just justified – it demands immediate judgment in their favor.

### 3. Defendants' Fraudulent Scheme Was Deliberate, Calculated, and Actionable Under Wis. Stat. § 100.18(1).

Wis. Stat. § 100.18(1) provides that no person or entity, with intent to sell or promote real estate, goods, services, or employment, shall make or distribute any advertisement or statement – through any medium – that is untrue, deceptive, or misleading. Wisconsin courts divide Wis. Stat. § 100.18(1) claims into three elements: (1) the defendant made a representation to "the public" with the intent to induce an obligation, (2) the representation was "untrue, deceptive or misleading," and (3) the representation materially caused a pecuniary loss to the plaintiff. *Murillo v. Kohl's Corp.*, 197 F. Supp. 3d 1119, 1126 (E.D. Wis. 2016) (citing *Novell v. Migliaccio*, 2008 WI 44, ¶ 30, 309 Wis.2d 132, 145, 749 N.W.2d 544, 550.

Wisconsin courts interpret the purpose of § 100.18 as protecting Wisconsin residents from untrue, deceptive, or misleading representations made to promote the sale of a product to a consumer. *K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 2006 WI App 148, ¶ 22, 295 Wis.2d 298, 720 N.W.2d 507. Claims under § 100.18 require more than showing that the plaintiff sustained a loss that is somehow connected to a misrepresentation made to the public. *Thermal Design, Inc. v. Am. Soc. of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.*, 775 F. Supp. 2d 1082, 1089–90 (E.D. Wis. 2011). Rather, the key question is whether "the representation...materially induce[d] the plaintiff's decision to act and [whether the] plaintiff would have acted in the absence of the representation." *Thermal Design, Inc. v. Am. Soc. of Heating, Refrigerating & Air-*

*Conditioning Eng'rs, Inc.*, 775 F. Supp. 2d 1082, 1089–90 (E.D. Wis. 2011) (quoting *Novell v. Migliaccio*, 2008 WI 44, ¶ 51, 309 Wis.2d 132, 145, 749 N.W.2d 544, 550).

The Defendants did not make a mistake. They did not miscalculate, misinterpret, or exaggerate in good faith. They lied. They orchestrated an elaborate deception, deliberately fabricating their real estate empire, manipulating public perception, and preying on unsuspecting investors – all to line their own pockets. Their fraudulent conduct is precisely the type of deception Wis. Stat. § 100.18(1) was designed to prevent, and the Plaintiffs are entitled to full relief. Specifically, the Defendants' public statements and advertisements misrepresented their real estate investment portfolio, boasting about owning properties worth $20 million, while evidence presented in their deposition[2] and public records show that the Defendants owned only four properties valued at just over $500,000. (Goodhart Dec. at ¶ 8 Ex. F; Goodhart Dec. at ¶ 9 Ex. G; Goodhart Dec. at ¶ 10 Ex. H). Defendant Nantomah acknowledged that as of 2022, the value of his assets had not exceeded $1 million. (Goodhart Dec. at ¶ 14, Ex. L Nantomah Depo. 274:3-17.) This discrepancy is not merely an exaggeration, but a false statement made with the intent to mislead potential investors, including the Plaintiffs, into believing they were participating in a profitable and legitimate investment opportunity.

Adding to the deception, Defendant Nantomah falsely advertised the Defendants' ownership and control over the Milwaukee property described in the Investment Agreement (Goodhart Dec. at ¶ 3 Ex. A). However, public records and tax bills definitively prove that the Defendants never owned the property located at 3622 N 37th Street, Milwaukee, WI

---

[2] Despite serving discovery requests, the Defendants failed to respond. The deposition transcript provided is from a nearly identical case against Defendants Nantomah and his entities - *Onwukeme v. Global Investors Capital et al.*, Milwaukee County Case No. 24CV1490.

53216 (Goodhart Dec. at ¶ 11 Ex. I). These records expose Defendant Nantomah's scheme for what it was: a calculated attempt to lure the Plaintiffs into a fraudulent investment under entirely false pretenses. By fabricating ownership of the property and leveraging social media for further promotion, Defendant Nantomah engaged in a pattern of deceit that directly led to the Plaintiffs' substantial financial losses.

The Defendants' actions therefore fulfill all three elements of a deceptive trade practices claim under Wis. Stat. § 100.18(1). First, they made a public representation through various advertisements and social media platforms with the intent to induce the Plaintiffs to invest in their real estate ventures. Second, these representations were untrue and misleading, as they falsely claimed to have a real estate portfolio worth millions and promised to use the Plaintiffs' investment to generate significant returns. However, the evidence shows that the Defendants' portfolio was far less valuable, and they did not use the Plaintiffs' funds as advertised, undermining the credibility of their claims. Third, these misrepresentations materially induced the Plaintiffs to act – specifically, to invest in the Defendants' real estate ventures real estate portfolio advertised in Mr. Nantomah's Instagram post. Had Plaintiff Olajide known the true extent of the Defendants' real estate holdings, they would not have invested in the program or provided the funds for the investments.

The evidence is clear: the Defendants misled the Plaintiffs through deceptive trade practices, inducing them to make significant investments under false pretenses. Therefore, the Plaintiffs' claim for deceptive trade practices should be granted, as the Defendants' actions violated the protections offered under Wis. Stat. § 100.18, causing material harm to the Plaintiffs.

4. **The Defendants' Admission of an Unregistered Security Mandates**

**Judgment in Plaintiffs' Favor.**

Under Wisconsin and federal law, a security is broadly defined to include any investment contract, note, stock, or other financial instrument that involves an investment of money in a common enterprise with the expectation of profits derived from the efforts of others. Wis Stat. § 551.102(28), 15 U.S.C. § 77b.

In Wisconsin, selling or offering a security is prohibited unless it is federally covered, registered, or exempt from registration under Wis. Stat. § 551.301. If a sale violates this provision, the buyer may seek to recover the amount paid for the security, minus any income received, along with the legal rate of interest. *Toshner v. Goodman*, No. 18-CV-2005-BHL, 2024 WL 473616, at *9 (E.D. Wis. Feb. 7, 2024). Defendants cannot claim an exemption under Wis. Stat. § 551.202, which enumerates specific securities that are exempt from registration. This list primarily includes:

1. Government-backed securities;
2. Securities issued by banks, credit unions, or regulated insurance companies;
3. Certain nonprofit and cooperative-issued securities; and
4. Limited small offerings meeting specific criteria.

Defendants' own admissions in their answer and discovery responses confirm that the investments at issue were not registered securities (Goodhart Dec. at ¶ 5 Ex. C ¶ 67; Goodhart Dec. at ¶ 6 Ex. D Request for Admission Nos. 17, 18, 19, and 20). This fact alone establishes a violation of Wis. Stat. § 551.301. Because registration is the default requirement, Defendants bear the burden of proving that an exemption applies. Defendants do not – and cannot – argue that the investments at issue fit within any of the exemptions listed in Wis. Stat. § 551.202. The investments were not issued by a government entity, bank, credit union, or nonprofit, nor do they qualify as a small exempt offering under the

13

law. Without a valid exemption, Defendants' failure to register these securities was unlawful. With no valid defense to the claim, Wisconsin law provides a clear remedy: the buyer of an unlawfully sold security is entitled to recover the purchase price, minus any income received, plus interest. Because Defendants have admitted the central facts establishing liability, the Plaintiffs are entitled to judgment as a matter of law

### 5. Defendants' Misstatements and Omissions in the Sale of Securities Violate Wis. Stat. § 551.501 and Warrant Immediate Relief for the Plaintiffs.

Under Wis. Stat. § 551.501, it is unlawful to make a false statement of material fact or omit a necessary fact that would prevent a statement from being misleading in connection with the offer, sale, or purchase of a security. A buyer bringing a claim must show they were unaware of the falsehood or omission. *Toshner v. Goodman*, No. 18-CV-2005-BHL, 2024 WL 473616, at *11 (E.D. Wis. Feb. 7, 2024). The statute also prohibits engaging in any act, practice, or business conduct that operates as fraud or deceit. *Id*. Proof of intent to defraud is not required, but the defendant must have known of the falsehood or failed to exercise reasonable care in discovering the truth. *Toshner v. Goodman*, No. 18-CV-2005-BHL, 2024 WL 473616, at *11 (E.D. Wis. Feb. 7, 2024); *Dorsch v. Butler (In re Butler)*, No. 17-22141-svk, 2017 WL 5151678, at *7 (Bankr. E.D. Wis. Nov. 6, 2017) (citing *State v. Temby*, 322 N.W.2d 522, 526–27 (Wis. Ct. App. 1982)).

A person who is paid for investment advice and engages in fraud or deceit is liable to the defrauded party. Wis. Stat. § 551.501(6). The victim may sue to recover the amount paid for the advice, actual damages, legal interest, costs, and reasonable attorney fees, minus any income gained from the fraudulent conduct. *Id*.

The Defendants' actions in this case represent a blatant violation of Wis. Stat. § 551.501. The evidence is overwhelming – the Defendants intentionally misled the Plaintiffs

14

through false representations about the value and ownership of their real estate portfolio, knowing that these falsehoods would prompt the Plaintiffs to invest. The Defendants' conduct wasn't merely negligent – it was a deliberate scheme to induce the Plaintiffs into parting with their money under false pretenses.

The law does not require proof of intent to defraud – it is sufficient to show that the Defendants made a statement that was false or misleading and that the Plaintiffs relied on it. And here, the evidence is irrefutable: the Defendants either knew or should have known that their statements were false, yet they willfully made them with reckless disregard for the truth. The Defendants' public statements about the size and value of their portfolio – claiming to own properties worth $20 million, when in reality they only owned a fraction of that value – were not only false but designed to deceive. The Defendants blatantly misrepresented their ownership of the properties located at 3622 N 37th Street, Milwaukee, WI 53216, 7026 Lakeview Drive, San Antonio, TX 78444, and 727 Key Windy Way, Converse, TX 78109 which they solicited the Plaintiffs to invest in. These misrepresentations were material because they directly impacted the Plaintiffs' decision to invest. Had Plaintiff Olajide known the truth about the Defendants' actual holdings, they would never have invested their hard-earned money into a venture based on such fraudulent claims.

The Defendants' conduct here was not a mere oversight or breach of contract – it was a calculated attempt to mislead and defraud the Plaintiffs. The Plaintiffs' claims under Wis. Stat. § 551.501 should be granted in full, and the Defendants should be ordered to pay damages as law is clear: the Defendants are liable for the damages caused by their fraudulent conduct, which includes the entire amount paid by the Plaintiffs for their "advice," along with interest, costs, and attorney fees.

15

### 6. Defendants Exploited Plaintiffs' Inexperience and Deceived Them into Risking Their Funds in an Unlawful, Unregistered Offering Under § 12(a)(1) of the Securities Act of 1933.

The Securities Act of 1933 (the "Act") generally prohibits the sale of unregistered securities in interstate commerce unless they fall within an exemption. Section 5(a) makes it unlawful to sell or deliver unregistered securities, while Section 5(c) requires a registration statement before offering or selling securities in interstate commerce (15 U.S.C. § 77e(a), (c)). Violations of these provisions trigger liability under Section 12(a)(1), which allows purchasers to recover the amount paid for the security with interest, less any income received, or to seek damages if they no longer own the security (15 U.S.C. § 77l(a)(1)). The Supreme Court has clarified that statutory sellers under Section 12(a)(1) include both direct sellers and those who actively solicit the sale for financial gain. *See Pinter v. Dahl*, 486 U.S. 622, 644 n. 22, 647 (1988); *ABN AMRO, Inc. v. Cap. Int'l Ltd.*, 595 F. Supp. 2d 805, 831 (N.D. Ill. 2008).

However, the Act provides exemptions for certain transactions. Section 4(2) exempts from registration "transactions by an issuer not involving any public offering" (15 U.S.C. § 77d(a)(2)). Courts have interpreted this exemption to apply to offerings directed at investors who can evaluate risks independently and do not require the protections of registration. *ABN AMRO, Inc. v. Cap. Int'l Ltd.*, 595 F. Supp. 2d 805, 832–33 (N.D. Ill. 2008). Courts consider four key factors in determining whether an offering qualifies as a private placement: (1) the number of offerees and their relationship to the issuer, (2) the number of units offered, (3) the size of the offering, and (4) the manner of the offering. *Id*.

In cases where investors knowingly participate in unregistered transactions, courts may assume they meet the requirements of a Section 4(2) or Rule 506 exemption, meaning they are sophisticated investors capable of fending for themselves. *Acme Propane, Inc. v.*

16

*Tenexco*, Inc., 844 F.2d 1317, 1321 (7th Cir. 1988).

The Defendants' actions in this case unmistakably violate the Act, specifically Section 5 as the Defendants have actively offered and sold securities without registering them, circumventing the legal safeguards designed to protect investors (Goodhart Dec. at ¶ 4 Ex. C ¶ 65; Goodhart Dec. at ¶ 6 Ex. D Request for Admission Nos. 14, 15, 16, 17, 18, 19, and 20). In this instance, the Defendants not only failed to comply with the Section 5 registration requirements but also failed to establish that their offering falls within any of the recognized exemptions under the Act. They cannot claim an exemption under Section 4(2) for private offerings because, as the facts demonstrate, their solicitation reached a broader, more public audience without the protections available in private placements. The factors that determine whether an offering qualifies for an exemption – such as the number of offerees, the relationship between the issuer and the investors, and the size and manner of the offering – do not support the Defendants' defense of a private offering.

Moreover, the Defendants cannot shield themselves behind the argument of investor sophistication or intent. The Plaintiffs were not sophisticated investors capable of evaluating the financial risks involved in this unregistered offering, which directly contravenes the premise of a private placement exemption. The Plaintiffs invested with the Defendants precisely because they lacked the expertise to assess the risks themselves and sought guidance and assurances regarding real estate investment returns. They entrusted the Defendants to provide them with expert advice and to manage the investment with transparency and integrity. The Defendants took full advantage of this trust, knowingly failing to disclose the necessary information about the risks involved and misleading the Plaintiffs into believing they were making a sound financial decision.

The failure to register the securities coupled with misrepresentations about the

17

potential returns and the legitimacy of the investment undermines the notion of a transaction between informed parties. The Defendants' failure to comply with federal registration requirements and their failure to inform investors properly renders these securities transactions unlawful under Section 12(a)(1) of the Act. Given their blatant disregard for federal securities law, and their actions which were aimed at enticing and defrauding investors, this Court should grant judgment in favor of the Plaintiffs, ensuring that they receive full compensation for their unlawful investment in these unregistered securities.

## CONCLUSION

In this case, the Defendants acted as master illusionists, weaving a web of deceit to lure the Plaintiffs into a trap of false promises and hollow guarantees. Instead of following through on their representations and investing the Plaintiffs' money as promised, the Defendants kept the funds for their own benefit, while completing only one investment return. The Plaintiffs were misled into believing they were participating in a legitimate investment opportunity, but in reality, the Defendants had no intention of honoring their commitments.

The law does not stand idly by when it is clear that deceit has been used to strip people of their wealth and security. The Plaintiffs did not simply suffer a poor investment decision – they were defrauded, misled, and manipulated by those who had no intention of honoring their promises. In light of the uncontroverted facts, the Plaintiffs request this Court to put an end to the Defendants' fraudulent game and grant summary judgment in their favor, ensuring that justice is served and the Defendants are held fully accountable for their deceitful actions.

Dated at Milwaukee, Wisconsin on this 27th day of June 2025.

                                            **AxePoint Law**
Attorneys for Plaintiffs

*Electronically signed by:*
s/Kate Goodhart
State Bar No. 1121648
s/ O. Emil Ovbiagele
State Bar No. 1089677

826 N Plankinton Ave., Suite 600
Milwaukee, WI 53203
(414) 585-0588 (office)
(414) 255-3031 (fax)
kate@axepoint.com
emil@axepoint.com