# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

OLAMIDE OLAJIDE, et al.,

      **Plaintiffs,**

   v.        **Case No. 24-CV-998**

JOSEPH NANTOMAH, et al.,

      **Defendants.**

## ORDER

### 1. Procedural History

Plaintiffs Olamide Olajide and Billyhaan LLC brought suit in federal court against Joseph Nantomah and High Income Performance Partners LLC based on diversity jurisdiction. (ECF No. 1.) On June 27, 2025, the plaintiffs filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 25.) All parties have consented to the full jurisdiction of this court pursuant to 28 U.S.C. § 636(c). (ECF Nos. 9, 10.)

The defendants have not responded to the motion for summary judgment, even after the court entered an order warning of the consequences and affording them a

courtesy extension. (ECF No. 30.) Therefore, the court will rule on the motion for summary judgment without the benefit of hearing from the defendants.

## 2. Facts

Because the defendants failed to respond, each of the plaintiffs' proposed findings of fact is deemed admitted for purposes of this motion. *See* Civ. L. R. 56(b)(4); *see also Terrell v. Am. Drug Stores*, 65 F. App'x 76, 77 (7th Cir. 2003) ("[W]hen a party fails to respond to a motion for summary judgment, its failure 'constitutes an admission … that there are no disputed issues of fact warranting a trial.'") (citations omitted). The court summarizes the findings of fact as follows.

Defendant Nantomah established High Income Performance Partners LLC (HIPP) as a Wisconsin limited liability company in 2020. (ECF No. 27, ¶ 3.) In October 2023, plaintiff Olajide encountered Nantomah on social media, where Nantomah promoted real estate investment opportunities and promised high returns through house "flipping." (*Id.*, ¶ 6.) Over the course of several phone calls with Olajide, Nantomah claimed that he had successfully flipped hundreds of properties and made millions of dollars in profits. (*Id.*, ¶¶ 9, 13.) He stated that "investing with him was 'zero risk' because he had personal guarantees in place" and that investments would be used solely for rehabbing and flipping properties with guaranteed returns. (*Id.*, ¶ 12.)

Relying on Nantomah's representations, the plaintiffs[1] entered into a formal investment agreement (the "First Agreement") with HIPP[2] on October 7, 2023. (ECF No. 27, ¶ 14.) Pursuant to the terms thereof, the plaintiffs made an initial payment of $50,000 on October 25, 2023. (*Id.*, ¶ 16.) The investment was to be used for rehabbing and flipping the property located at 3622 N. 37th Street, Milwaukee, WI 53216. (*Id.*, ¶ 15; *see also* ECF No. 29-1 at 1–2 (where the terms of the First Agreement identify this property and state the investment is "only for the land purchase / fixing and flip of properties").) The First Agreement promised a $20,000 return on investment within eight months. (ECF No. 29-1 at 3.)

Nantomah subsequently contacted Olajide regarding two additional investment opportunities. (ECF No. 27, ¶¶ 17, 21.) On November 7, 2023, the plaintiffs executed two investment agreements (the "Second Agreement" and the "Third Agreement") on similar terms, each requiring the plaintiffs to invest an additional $20,000 and each guaranteeing

---

[1] The proposed finding of fact states that both plaintiffs became parties to the investment agreement. (ECF No. 27, ¶ 14.) The First Agreement names Billyhaan LLC and Olajide collectively as the "Investor," but Olajide only signed the First Agreement once, on behalf of Billyhaan LLC. (ECF No. 29-1 at 1, 7.) The same is true of the Second and Third Agreements. (ECF Nos. 29-2, 29-3.) Despite the inconsistencies between named parties and signatories, and in light of the lack of opposition, the court finds the naming of both parties sufficient to allow both plaintiffs to enforce these contracts. *See, e.g., E. Lake Towers Corp. Ctr. Ltd. P'ship v. Scott Paper Co.*, 347 F. Supp. 2d 629, 632 (E.D. Wis. 2004) ("As a general rule, only a party to a contract may enforce it unless the contract is made for the benefit of a third party.").

[2] The proposed finding of fact states that the plaintiffs contracted with Nantomah and HIPP. (ECF No. 27, ¶ 14.) However, Nantomah was not a named party or individual signatory to any of the parties' three investment agreements. (ECF Nos. 29-1, 29-2, 29-3.) Nantomah signed the First and Third Agreements on behalf of HIPP. (ECF Nos. 29-1, 29-3.) He did not sign the Second Agreement. (ECF No. 29-2.)

a return on investment of $23,000 within three months.[3] (*Id.*, ¶¶ 18, 22.) The second investment would be used for rehabbing and flipping the property located at 7026 Lakeview Drive, San Antonio, TX 78444. (*Id.*, ¶ 19.) The third investment would be used for rehabbing and flipping the property located at 8727 Key Windy Way, Converse, TX 78109. (*Id.*, ¶ 23.)

Under the Second Agreement, HIPP owed the plaintiffs $23,000 on February 7, 2024. (ECF No. 27, ¶ 27.) It failed to pay any money by this deadline. (ECF No. 27, ¶ 28.) Under the Third Agreement, HIPP owed the plaintiffs $23,000 on February 16, 2024. (*Id.*, ¶ 27.) It made a late payment to the plaintiffs and paid $24,000 as compensation for the delay. (*Id.*, ¶ 29.) Under the First Agreement, HIPP owed the plaintiffs $70,000 on June 25, 2024. (*Id.*, ¶ 25.) It failed to pay any additional money by this deadline. (*Id.*, ¶ 26.)

The plaintiffs contacted Nantomah demanding payment multiple times from February 2024 through the filing of this lawsuit. (ECF No. 27, ¶ 30.) The plaintiffs have not received any of the remaining $92,000 they allege to be owed ($23,000 under the Third Agreement plus $70,000 under the First Agreement minus $1,000 overpayment under the Second Agreement). (*Id.*, ¶ 32.)

At no point during these transactions did the defendants provide the plaintiffs with a registration statement, disclosure statement, or any regulatory filings showing that

---

[3] The Second and Third Agreements state that the return payments were due within three months, but each also specify a date certain: February 7, 2023 and February 16, 2023. (ECF Nos. 29-2 at 2, 29-3 at 3.) The year was an obvious typographical error, given that the parties executed the agreements in October 2023.

the investments were registered with the U.S. Securities and Exchange Commission (SEC), Wisconsin Department of Financial Institutions, or any other financial agency. (ECF No. 27, ¶ 33.)

### 3. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This burden remains on the movant even if the non-movant fails to respond. *See Gerhartz v. Richert*, 779 F.3d 682, 685–86 (7th Cir. 2015). In resolving a motion for summary judgment, the court is to "construe all evidence and draw all reasonable inferences from the evidence in" favor of the non-movant. *E.Y. v. United States*, 758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008); *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001)).

Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable factfinder could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and [in] opposition to the motion for summary judgment." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016).

### 4. Analysis

The plaintiffs' complaint lodged seven claims against the defendants (ECF No. 1, ¶¶ 31–90), but they moved for summary judgement only on the first six claims. The court will address each in turn.

### 4.1. Breach of Contract

The plaintiffs allege that the defendants breached the First and Second Agreements. (ECF No. 26 at 5–7.) Each of these agreements states that it shall be interpreted in accordance with the laws of Wisconsin. (ECF Nos. 29-1 at 5, 29-2 at 5.) "Under Wisconsin law, prevailing on a claim for breach of contract 'requires proof of three elements: (1) a valid contract; (2) breach of that contract by the defendant; and (3) damage from the breach.'" *Dental Health Prods., Inc. v. Sunshine Cleaning Gen. Servs., Inc.*, 657 F. Supp. 3d 1151, 1155 (E.D. Wis. 2023) (citations omitted).

#### (a) Valid Contract

"Creation of a contract requires an offer, an acceptance, and consideration." *Skyrise Constr. Grp., LLC v. Annex Constr., LLC*, 956 F.3d 950, 956 (7th Cir. 2020). "The existence of an offer and acceptance are mutual expression of assent, and consideration is evidence of the intent to be bound to the contract." *Id.* (quoting *NBZ, Inc. v. Pilarski*, 520 N.W.2d 93, 96 (Wis. Ct. App. 1994)).

With respect to the First Agreement, the terms reflect HIPP's offer to pay the plaintiffs $70,000 after eight months in exchange for a $50,000 upfront payment. (ECF

No. 29-1.) Nantomah executed the First Agreement on behalf of HIPP, thereby manifesting its assent to be bound by the agreement. (*Id.* at 7.) The plaintiffs manifested their acceptance of HIPP's offer and mutual promise to pay via Olajide's signature (on behalf of Billyhaan LLC) and wire transfer of $50,000 on October 25, 2023. (*See* ECF No. 29-1 at 7 (signature); ECF No. 28-2 at 1–2 (wire transfer receipt with last four digits of account number matching the account listed in the First Agreement).) The wire transfer and promised return payment are mutual obligations that satisfy the element of consideration. *See Runzheimer Int'l, Ltd. v. Friedlen*, 862 N.W.2d 879, 885 (Wis. 2015) (observing that "a promise for a promise, or the exchange of promises, will constitute consideration to support any contract of [a] bilateral nature") (citation omitted). Therefore, the First Agreement constituted a valid contract between the plaintiffs and HIPP.

Similarly, the terms of the Second Agreement reflect HIPP's offer to pay the plaintiffs $23,000 after three months in exchange for a $20,000 upfront payment. (ECF No. 29-2.) Although Nantomah did not sign the Second Agreement on behalf of HIPP (ECF No. 29-2 at 7), in their answer the defendants admitted that they entered into this agreement. (ECF No. 6, ¶ 17.) The undisputed facts also reflect that Nantomah communicated the terms of the Second Agreement on behalf of HIPP (ECF No. 27, ¶¶ 18–19) and that the plaintiffs transferred the promised investment to HIPP's account. (*Id.*, ¶ 20 (proposed findings of fact); ECF No. 29-2 at 2 (HIPP account details in the Second

Agreement); ECF No. 28-2 at 3 (wire transfer receipt). Therefore, the undisputed record reflects HIPP's expression of assent to be bound by the Second Agreement. The plaintiffs manifested their acceptance of HIPP's offer and mutual promise to pay via Olajide's signature (on behalf of Billyhaan LLC) and wire transfer on November 9, 2023. (*See* ECF No. 29-2 at 7 (signature); ECF No. 28-2 at 3 (wire transfer receipt for $40,000 covering the investments under the Second and Third Agreements, with last four digits of the account number matching the account listed in the agreements).) Again, the upfront wire transfer and promised return payment are mutual obligations that satisfy the element of consideration. Therefore, the Second Agreement constituted a valid contract between the plaintiffs and HIPP.

To the extent that the plaintiffs assert a breach of contract claim against Nantomah individually, there is no evidence of a contract with Nantomah in his individual capacity. The court will deny the plaintiffs' motion with respect to Nantomah individually.

### (b) Breach of Contract

By the contracts' plain terms, HIPP owes the plaintiffs $70,000 under the First Agreement and $23,000 under the Second Agreement. (ECF Nos. 29-1, 29-2.) HIPP has not satisfied these obligations (ECF No. 27, ¶ 32), and the time for performance is past due (ECF No. 29-1 at 3; ECF No. 29-2 at 3.). Therefore, HIPP's failure to fulfill its promises plainly constitutes breach of the First and Second Agreements.

**(c) Damages**

"[U]nder general principles of contract law, '[a]n injured party is entitled to the benefit of his agreement, which is the net gain he would have realized from the contract but for the failure of the other party to perform.'" *Dental Health Prods.*, 657 F. Supp. 3d at 1156 (quoting *Peterson v. Cornerstone Property Development, LLC*, 720 N.W.2d 716, 730 (Wis. 2006)). The plaintiffs assert that HIPP's outstanding obligation totals $92,000—evidently reducing their demand by $1,000 because HIPP overpaid them when it satisfied the Third Agreement. (ECF No. 26 at 4.) The court concludes that the plaintiffs have established recoverable damages in the amount of $92,000.

In sum, the plaintiffs have established two valid contracts, breach of those contracts, and damages therefrom. Judgment as a matter of law will therefore be entered in the plaintiffs' favor on their breach of contract claim against HIPP.

**4.2. Civil Theft**

The plaintiffs argue that the defendants' actions also constitute a tort known as civil theft. (ECF No. 26 at 8–10.) Wisconsin law permits victims of theft to pursue civil causes of action. *See* Wis. Stat. § 895.446(1). As relevant to this case, theft is defined to "include the intentional use, transfer, concealment, or retention of possession of money 'without the owner's consent, contrary to his or her authority, and with intent to convert … to the use of any other person except the owner.'" *Milwaukee Ctr. for Indep., Inc. v. Milwaukee Health Care, LLC*, 929 F.3d 489, 494 (7th Cir. 2019) (quoting Wis. Stat.

§ 943.20(1)(b)). The plaintiffs acknowledge that simply failing to pay someone money you owe him or her under a contract does not constitute theft. (ECF No. 26 at 8 (citing *Kentuckiana Healthcare, Inc. v. Fourth St. Sols., LLC*, 517 F.3d 446, 447 (7th Cir. 2008)). Indeed, the victim must have an ownership interest in the stolen property. *Milwaukee Ctr. for Indep.*, 929 F.3d at 494.

The plaintiffs claim that the defendants unlawfully retained their investment funds without consent and with the intent to permanently deprive the plaintiffs of their rightful ownership. (ECF No. 26 at 8.) They allege that the defendants never acquired any ownership interest in the properties identified in the First, Second, or Third Agreements. (*See* ECF No. 28, ¶¶ 11–13 (describing property assessments submitted as Exhibits I, J, and K (ECF Nos. 28-9, 28-10, 28-11) for the respective properties).) But the property assessments submitted by the plaintiffs do not definitively prove that the defendants never owned the properties. *See Ibe v. Nantomah et al.*, No. 24-CV-388-SCD, 2025 WL 3187384, at *6, 2025 U.S. Dist. LEXIS 224258, at *17 (E.D. Wis. Nov. 14, 2025) (finding the plaintiffs failed to prove by a preponderance of the evidence that the defendants (Nantomah and a different business entity) owned the property in question because the names on the tax bill did not reveal whether it was "controlled by Nantomah or one of his companies or an associate or co-investor").

The plaintiffs assert in passing that the defendants used the investment money for their own purposes (ECF No. 26 at 9), but they do not offer a proposed finding of fact or

any other evidence to this effect. *See U.S v. Stevens*, 500 F.3d 625, 628 (7th Cir. 2007) ("[A]rguments in a … brief, unsupported by documentary evidence, are *not* evidence.") (emphasis in original); *see also Campania Mgmt. Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 853 (7th Cir. 2002) ("[I]t is universally known that statements of attorneys are not evidence."). Because the plaintiffs have not provided evidence that the defendants used their money for a purpose other than what the plaintiffs alleged, they have not established that the defendants retained possession of and used their money without consent. *See Bich v. WW3 LLC*, No. 20-C-1016, 2022 WL 18025219, at *10, 2022 U.S. Dist. LEXIS 233542, at *33 (E.D. Wis. Dec. 30, 2022) (dismissing a civil theft claim because the plaintiffs failed to allege that the defendants used their money for a purpose other than what they intended and the mere failure to repay a loan is not conversion), *aff'd sub nom. Charles Bich & Bruno Bich Tr. v. WW3 LLC*, 130 F.4th 623 (7th Cir. 2025).

The plaintiffs also do not contend—with respect to their claim for civil theft—that the defendants obtained their investment funds through false representation or deceit. (*See* ECF No. 26 at 8–10.) Obtaining property of another person by intentionally deceiving the individual with a false representation is another way to establish civil theft. Wis. Stat. § 943.20(1)(d). "False representation" is defined to include "a promise made with intent not to perform it if it is a part of a false and fraudulent scheme." *Id.* Elsewhere in their brief, the plaintiffs argue that the defendants deceived them by engaging in a "deliberate scheme" to induce the plaintiffs to invest under false pretenses. (ECF No. 26 at 10–12, 14–

15.) The court will address this contention of deceit in the context of the claims for which the plaintiffs raise the issue (deceptive trade practices and fraud in the sale of a security under state law).

Because the plaintiffs have not established the requisite misuse of their property or deceitful inducement to transfer their money to the defendants, they have not established a claim for civil theft as a matter of law. The court will deny their motion for summary judgment in this respect.

### 4.3. Deceptive Trade Practices

The plaintiffs contend that the defendants engaged in deceptive trade practices under Wisconsin Statute § 100.18(1). (ECF No. 26 at 10–12.) "A claim under § 100.18(1), has three elements: (1) the defendant made a representation to one or more members of the public with the intent to induce an obligation; (2) the representation was untrue, deceptive or misleading; and (3) the representation materially induced a pecuniary loss to the plaintiff." *T&M Farms v. CNH Indus. Am., LLC*, 488 F. Supp. 3d 756, 760 (E.D. Wis. 2020) (citing *Hinrichs v. DOW Chem. Co.*, 937 N.W.2d 37, 50 (Wis. 2020)).

The plaintiffs claim that the defendants "made a public representation through various advertisements and social media platforms with the intent to induce [them] to invest in their real estate ventures." (ECF No. 26 at 12; *see also* ECF No. 27, ¶ 44 (proposed finding of fact alleging that the defendants held public investment seminars).) The plaintiffs further assert that the defendants falsely represented that they had a real estate

portfolio worth millions of dollars and would use the plaintiffs' investment money to generate significant returns. (ECF No. 26 at 12.) The plaintiffs also maintain that these misrepresentations materially induced them to enter into the three investment agreements with HIPP and that they would not have invested had they known the true extent of the defendants' real estate holdings. (*Id.*)

To demonstrate the falsity of the defendants' representation that they owned properties worth millions of dollars, the plaintiffs rely on Nantomah's deposition in a "nearly identical case" lodged against him and his business entities in Milwaukee County. (ECF No. 26 at 11, n.2.) The plaintiffs make no effort to establish the admissibility of this deposition transcript in the present matter. Testimony given as a witness at a lawful deposition, even from a different proceeding, may be admitted if the declarant is unavailable and the party against whom it is now offered had "an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1); *see also* Fed. R. Civ. P. 32(a)(8) (permitting a deposition from an earlier action to be admitted in accordance with the Federal Rules of Evidence). The transcript of the prior deposition does not reveal whether Nantomah had an opportunity to develop the record because it ends after opposing counsel completed direct examination of Nantomah, without any mention of cross examination. (*See* ECF No. 28-12.) Because the prior deposition testimony does not comply with the Federal Rules of Evidence, the court will not rely on it for purposes of this motion.

The plaintiffs allege that they contracted with Nantomah based on representations he made to them over several phone calls. (ECF No. 27, ¶¶ 13–14.) Deceptive sales promotions communicated via private phone calls are actionable under Wis. Stat. § 100.18. *See K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 732 N.W.2d 792, 800 (Wis. 2007). The plaintiffs allege that Nantomah represented during their phone calls that HIPP was "well-established and a highly profitable investment company making millions and handling millions of dollars in real estate investment deals." (ECF No. 27, ¶¶ 10, 13.)

Beyond the unfulfilled contracts at the heart of this lawsuit, the plaintiffs do not point to any admissible evidence to the contrary. Standing alone, the breach of two of the parties' three contracts is insufficient to label these pre-contractual representations deceptive. Two additional proposed findings of fact state that Nantomah represented he had "personal guarantees in place" and that HIPP would use the plaintiffs' investments "solely for rehabbing and flipping properties with guaranteed returns." (ECF No. 27, ¶¶ 11, 12.) But the plaintiffs do not offer any evidence, or even a proposed finding of fact, that the defendants failed to follow through on these representations. Therefore, the plaintiffs do not offer admissible evidence that the defendants' pre-contractual representations made over the phone were false, deceptive, or misleading.

The plaintiffs also contend that the defendants never owned the properties identified in the First, Second, or Third Agreements. (*See* ECF No. 28, ¶¶ 11–13 (describing property assessments submitted as Exhibits I, J, and K (ECF Nos. 28-9, 28-10,

28-11) for the respective properties).) Even if the defendants never acquired any ownership interest, that fact would not make their representation that they intended to do so deceptive. (*See* ECF Nos. 29-1 at 2, 29-2 at 2 (where each of the First and Second Agreements indicate that the investment would be used "only for the land purchase / fixing and flip of properties").) The plaintiffs highlight that "Nantomah regularly posted videos and images of luxury cars, large homes, and lavish vacations as proof of his supposed financial success in real estate." (ECF No. 27, ¶ 8.) But the plaintiffs do not allege that the defendants made deceptive representations—only that they inferred the subjectively flashy posts confirmed Nantomah's wealth and success in real estate. (*See id.*)

The plaintiffs have not provided admissible evidence of untrue, deceptive or misleading representations by the defendants. Because they have failed to carry their burden of proof, the court will deny the plaintiffs' motion for summary judgment with respect to the deceptive trade practices claim under Wisconsin Statute § 100.18(1).

### 4.4. Sale of an Unregistered Security under State Law

The plaintiffs argue that the defendants sold them an unregistered security in violation of state law. (ECF No. 26 at 13–14.)

Under Wisconsin law, a "security" includes "[a]n investment in a common enterprise with the expectation of profits to be derived through the essential managerial efforts of someone other than the investor." Wis. Stat. § 551.102(28)(d)(1). The statute

defines a "common enterprise" as "an enterprise in which the fortunes of the investor are tied to the efficacy of the efforts of those seeking the investment or a third party." *Id.*

The plaintiffs invested money with an expectation of profits to be derived from HIPP's efforts to "flip" houses. (*See* ECF Nos. 29-1, 29-2, 29-3 (First, Second, and Third Agreements).) The contracts facilitating those investments did not contemplate any effort by the plaintiffs beyond transferring the investment funds. *See* Wis. Stat. § 551.102(28)(d)(1). Accordingly, the court concludes that the parties' transactions pursuant to the First, Second, and Third Agreements constituted securities under Wisconsin law. *Cf. Adeosun v. Nantomah, et al.*, No. 24-CV-389-SCD, 2025 WL 3187413, at *5, 2025 U.S. Dist. LEXIS 224260, at *15 (E.D. Wis. Nov. 14, 2025) (granting summary judgment to plaintiffs on state unregistered security claim based on nearly identical facts involving Nantomah and another business entity); *Okeke v. Nantomah*, No. 25-CV-36-PP, 2025 WL 2494024, at *5, 2025 U.S. Dist. LEXIS 168717, at *14–15 (E.D. Wis. Aug. 29, 2025) (same, in the context of a motion for default judgment).

Under Wisconsin Statute § 551.301, selling or offering a security is prohibited unless it is federally covered, registered, or exempt from registration. In their answer to the plaintiffs' complaint, the defendants admitted that the investments the plaintiffs made pursuant to the terms of the First, Second, and Third Agreements "were not registered with the SEC or any state regulatory agency." (ECF No. 1, ¶ 67; ECF No. 6, ¶ 67.) By failing to respond to the plaintiffs' requests for admission during the discovery

phase, the defendants effectively admitted under Federal Rule of Civil Procedure 36(a)(3) that: (1) they never submitted any forms or documentation to the SEC related to the investment opportunities described in this lawsuit; (2) the investment opportunities were not covered securities; and (3) the investment opportunities were not exempt from Wisconsin or federal securities registration. (ECF No. 28-4 at 11.) Therefore, the undisputed facts establish as a matter of law that HIPP sold unregistered securities in violation of Wisconsin Statute § 551.301.

The plaintiffs seek to recover "the purchase price, minus any income received, plus interest" as a remedy for this violation. The court agrees that Wisconsin Statute § 51.509(2)(a) provides this relief and concludes that HIPP is liable therefor. The court will grant the plaintiffs' motion for summary judgment with respect to their claim that HIPP sold them an unregistered security in violation of Wisconsin law. Given that Nantomah was not a party to the investment agreements, the court will deny the plaintiffs' motion against him in his individual capacity.

### 4.5. Misstatement or Omission in the Sale of a Security under State Law

The plaintiffs argue that that the defendants violated state law by making misstatements and omissions in the sale of securities. (ECF No. 26 at 14–15.) As previously established, the parties' transactions pursuant to the First, Second, and Third Agreements constituted securities under Wisconsin law.

Under Wisconsin Statute § 551.501(2), it is unlawful to make a false statement of material fact or omit a necessary fact that would prevent a statement from being misleading in connection with the offer, sale, or purchase of a security. The statute also prohibits engaging in "an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person." Wis. Stat. § 551.501(3). Proof of intent to defraud is not required, but the defendant must have known of the falsehood or failed to exercise reasonable care in discovering the truth. *Toshner v. Goodman*, No. 18-CV-2005-BHL, 2024 WL 473616, at *11, 2024 U.S. Dist. LEXIS 21217, at *30 (E.D. Wis. Feb. 7, 2024) (citing *State v. Temby*, 322 N.W.2d 522, 526–27 (Wis. Ct. App. 1982)).

The plaintiffs make vague accusations that the evidence is "overwhelming" and that the defendants "blatantly" violated the statute by engaging in a "deliberate scheme" to induce the plaintiffs to invest under false pretenses. (ECF No. 26 at 14–15.) However, the plaintiffs fail to properly support these claims. They repeat their contention that the defendants lied about the size and value of their real estate portfolio. (*Id.* at 15.) But, as the court already explained, the plaintiffs have not provided any admissible evidence to that effect. (*See supra* at 13–15.) The plaintiffs also claim that the defendants misrepresented their ownership of the properties identified for "flipping" in the First, Second, and Third Agreements when they solicited the plaintiffs' investments. (ECF No. 26 at 15.) Neither the parties' contracts nor the plaintiffs' proposed findings of fact indicate that the defendants represented that they owned the identified properties prior

to executing the investment agreements. Therefore, the plaintiffs cannot reasonably argue they relied on such a representation when deciding to invest.

The plaintiffs have failed to establish that the defendants made a material misstatement or omission in the sale of a security. Accordingly, the court will deny the plaintiffs' motion for summary judgment in this respect.

### 4.6. Sale of Unregistered Securities under Federal Law

The plaintiffs argue that the defendants sold them an unregistered security in violation of federal law. (ECF No. 26 at 16–18.)

Under the Securities Act of 1933, the term "security" is broadly defined "to encompass virtually any instrument that might be sold as an investment." *S.E.C. v. Edwards*, 540 U.S. 389, 393 (2004) (quoting *Reves v. Ernst & Young*, 494 U.S. 56, 61 (1990)). "Investment contracts" fall within that definition, and the Supreme Court has developed a test to determine whether a particular scheme is an investment contract: the court must consider "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *Id.* (quoting *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946)).

In this case, the plaintiffs invested money with the expectation that their profits would be derived solely from HIPP's efforts. The fact that the plaintiffs' investment return was not contractually tied to the success or actual profit margins of the defendants is irrelevant because the Supreme Court has clarified that "[t]here is no reason to

distinguish between promises of fixed returns and promises of variable returns for purposes of the [investment contract] test." *Edwards*, 540 U.S. at 394.

However, the plaintiffs have made no effort to demonstrate that the investment scheme was a "common enterprise" under federal law. (*See* ECF No. 26 at 16–18.) To do so, the plaintiffs needed to show a pooling of funds or sharing of profits with other investors. *See S.E.C. v. Yang*, 670 F. Supp. 3d 695, 711 (E.D. Wis. 2023) (citing *Stenger v. R.H. Love Galleries, Inc.*, 741 F.2d 144, 146 (7th Cir. 1984) ("This Circuit has strictly adhered to a 'horizontal' test of common enterprise, under which multiple investors must pool their investments and receive pro rata profits."). The plaintiffs' proposed findings of fact state that the defendants "engaged in multiple similar transactions" and solicited investors publicly without any limitations. (ECF No. 27, ¶¶ 41, 43, 44.) But these vague allegations do not suggest that the "similar" transactions would be pooled or share profits.

Because the plaintiffs have failed to demonstrate the "horizontal" commonality necessary for a common enterprise, they have not established that any of the transactions at issue involved securities under federal law. *See Adeosun v. Nantomah, et al.*, No. 24-CV-389-SCD, 2025 WL 3187413, at *7, 2025 U.S. Dist. LEXIS 224260, at *19 (E.D. Wis. Nov. 14, 2025) (denying motion for summary judgment because the plaintiffs did not provide any facts that other "investors pooled their funds or were entitled to receive profits").

Therefore, the court will deny the plaintiffs' motion for summary judgment with respect to the sixth claim in their complaint (sale of unregistered securities under federal law).

The plaintiffs' motion for summary judgment did not address the seventh claim in their complaint—for fraud in the sale of securities under federal law (ECF No. 1, ¶¶ 84–90)—but even if it had, the court would likewise deny summary judgment on that claim given the plaintiffs' failure to establish that the parties' investment agreements were securities under federal law.

## 5. Conclusion

**IT IS THEREFORE ORDERED** that the plaintiffs' motion for summary judgment (ECF No. 25) is **GRANTED IN PART AND DENIED IN PART**. The plaintiffs are entitled to judgment as a matter of law on the following claims against High Income Performance Partners: (1) breach of contract under the First and Second Agreements; and (2) the unlawful sale of unregistered securities under Wisconsin law. The plaintiffs' motion is denied with respect to its claims for: (1) civil theft; (2) deceptive trade practices; (3) misstatement or omission in the sale of a security under state law; and (4) the unlawful sale of unregistered securities under federal law. The court will also deny the plaintiffs' motion in all respects as to Nantomah in his individual capacity.

The Clerk of Court shall schedule a status conference to address how the case will proceed.

[Signature Page Follows]

Dated at Milwaukee, Wisconsin this 20th day of November, 2025.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge